IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DANNY JOHNSON and LACEE JOHNSON, | No. 4:20-CV-00491 |
| Plaintiffs, | (Chief Judge Brann) |
| v. | |
| KEANE GROUP HOLDINGS, LLC d/b/a FRACKING AND DRILLING SERVICES, LLC; KEANE GROUP, INC., and SENECA RESOURCES COMPANY, LLC, | |
| Defendants, | |
| v. | |
| PATRIK'S WATER HAULING (USA) LTD. | |
| Third-Party Defendant. | |

**MEMORANDUM OPINION**

MAY 3, 2023

In this civil action, the Court is called upon to determine whether "gross negligence" requires a showing of recklessness. The particular context is an indemnification clause in a contract between two companies in the oil and gas industry. The clause excuses the indemnitor's obligation to defend or indemnify the two indemnitees for claims that arise out of their gross negligence. The indemnitees

now jointly move for summary judgment on their claim that the indemnitor must defend them from a personal injury lawsuit filed by an employee of the indemnitor.

But the Supreme Court of Pennsylvania has never precisely defined gross negligence. The parties here both provide competing definitions from intermediate appellate decisions that support their respective positions. After a review of the jurisprudence in this area, the Court concludes that gross negligence does not require a showing of recklessness and accordingly denies the indemnitees' motion for summary judgment.

I.  BACKGROUND

A.  **Underlying Facts**[1]

Defendant and Third-Party Plaintiff Seneca Resources Company, LLC, ("Seneca") operates an oil and gas wellsite in Mt. Jewett, Pennsylvania (the "Wellsite").[2] It contracted with Co-Defendant and Co-Third-Party Plaintiffs Keane Group Holdings, LLC, and NexTier Oilfield Solutions f/k/a Keane Group, Inc., whom the Court will collectively refer to as "Keane."[3] The Court refers to Seneca and Keane together as Defendants. Seneca also contracted with Third-Party Defendant Patrik's Water Hauling (USA) Ltd., ("Patrik's") and Keane to provide

---

[1] Unless otherwise noted, the following facts are undisputed.
[2] Defs.' Joint Statement of Undisputed Material Facts ("SUMF"), Doc. 60 ¶ 2; Patrik's Response to Statement of Undisputed Material Facts ("RSUMF"), Doc. 63 ¶ 2.
[3] Defs.' Joint SUMF, Doc. 60 ¶¶ 3-4; Patrik's RSUMF, Doc. 63 ¶¶ 3-4.

services at the Wellsite.[4] Seneca's relationship with Patrik's is governed by a Master Service Agreement (the "Seneca-Patrik's MSA").[5]

### 1. The Seneca-Patrik's MSA Indemnification Provisions

Section 7 of the Seneca-Patrik's MSA contains several indemnification provisions.[6] Relevant here, Section 7.2 provides that "[e]xcept in the case of [Seneca's] gross negligence or willful misconduct, [Seneca] shall not be responsible for, and [Patrik's] shall . . . hold Company Group . . . harmless from . . . any [c]laims . . . arising out of . . . [b]odily injuries or death of any member(s) of Contractor Group."[7] As is relevant to this matter, "Company Group" refers to Seneca and Seneca's contractors other than Patrik's.[8] "Contractor Group" refers to Patrik's and any of Patrik's agents.[9]

### 2. The Johnson Injury

During January 2018, Danny Johnson, a vacuum truck operator employed by Patrik's, was assigned to work at the Wellsite.[10] Patrik's requires its employees to undergo safety training to work at the Wellsite and specifically requires vacuum truck operators like Johnson to "inspect worksites for field-level hazards at the start

---

[4] Defs.' Joint SUMF, Doc. 60 ¶¶ 5-6; Patrik's RSUMF, Doc. 63 ¶¶ 5-6.
[5] Defs.' Joint SUMF, Doc. 60 ¶¶ 6-8; Patrik's RSUMF, Doc. 63 ¶¶ 6-8; Seneca-Patrik's MSA, Doc. 13-3.
[6] Seneca-Patrik's MSA, Doc. 13-3 at 5.
[7] *Id.* (§§ 7.2, 7.21).
[8] *Id.* at 7 (§ 7.6).
[9] *Id.*
[10] Defs.' Joint SUMF, Doc. 60 ¶ 9; Patrik's RSUMF, Doc. 63 ¶ 9.

of every shift" and complete a document known as a "Field Level Hazard Assessment."[11] Johnson completed a Field Level Hazard Assessment on January 6, 2018, indicating that there was a "medium" risk of slipping and falling at the wellsite which he could mitigate by "watch[ing] [his] footing."[12]

The parties dispute whether Johnson completed another Field Level Hazard Assessment on the following day, January 7, 2018. Johnson also did not attend required "joint safety meeting" at the start of every employee's shift on January 7, 2018, because he arrived after the meeting was over.[13] Before Johnson's arrival on January 7, Abigail Webb, a Keane employee assigned to the Wellsite, fell when she stepped into a gap in the grating over a "rathole" at Well 164 H.[14] Based on Keane's Incident Report for Webb's fall, she fell at approximately 10:30 a.m.[15]

Both Seneca and Keane required their employees to undergo safety training. That training included a video that instructed Seneca employees to stop work whenever they "believe[d] that an unsafe condition exists regardless of who is performing the work" and to "correct all unsafe work conditions."[16]

---

[11] Defs.' Joint SUMF, Doc. 60 ¶¶ 14-15; Patrik's RSUMF, Doc. 63 ¶¶ 14-15.
[12] Field Level Hazard Assessment, Doc. 75-16.
[13] Defs.' Joint SUMF, Doc. 60 ¶¶ 20-24; Patrik's RSUMF, Doc. 63 ¶¶ 20-24.
[14] Defs.' Joint SUMF, Doc. 60 ¶¶ 25-26; Patrik's RSUMF, Doc. 63 ¶¶ 25-26. A "rathole" is a hole drilled into the ground in the oil and gas production process. *See* Oil and Gas Well Drilling and Servicing eTool, OCCUPATIONAL SAFETY AND HEALTH ADMIN., available at https://www.osha.gov/etools/oil-and-gas/site-preparation/conductorhole#:~:text=A%20rathole%20is%20a%20hole,primary%20rig%20after%20rigging%2Dup.
[15] Webb Injury Incident Report, Doc. 74-8.
[16] *See* Doc. 74-21.

Keane's on-site safety representative, Kirby Leech, learned of Webb's fall and proceeded to Well 164 H but arrived after Webb had left.[17] At his deposition, Leech testified that he placed clones close to Well 164 H and instructed two other Keane employees to place caution tape around the well.[18] But the employees failed to place the caution tape.[19] Patrik's also denies that cones were placed at Well 164 H.

Later that day, Johnson arrived at the Wellsite and learned from Webb that she had been injured but was not made aware of how Webb became injured.[20] A Seneca employee directed Johnson to vacuum water out of the Well 164 H area, which Johnson proceeded to do.[21] While working, Johnson fell into the same "unguarded manhole" Webb fell into, injuring himself.[22]

### 3. The Danny Johnson Lawsuit

Johnson sued Seneca and Keane in the Court of Common Pleas of Lycoming County, Pennsylvania, alleging that Defendants' negligently maintenance of the Wellsite caused his injury.[23] Both Seneca and Keane made defense/indemnity tenders to Patrik's.[24] Berkley Environmental, an agent of Patrik's insurer, responded to Seneca's tender, indicating that it would investigate the claim but reserved its

---

[17]  Defs.' Joint SUMF, Doc. 60 ¶¶ 28-29; Patrik's RSUMF, Doc. 63 ¶¶ 28-29.
[18]  Dep. of Kirby Leech, Doc. 75-12 at 62:6-10.
[19]  Defs.' Joint SUMF, Doc. 60 ¶ 32; Patrik's RSUMF, Doc. 63 ¶ 32.
[20]  Defs.' Joint SUMF, Doc. 60 ¶¶ 33-36; Patrik's RSUMF, Doc. 63 ¶¶ 33-36.
[21]  Defs.' Joint SUMF, Doc. 60 ¶¶ 37-39; Patrik's RSUMF, Doc. 63 ¶¶ 37-39.
[22]  Defs.' Joint SUMF, Doc. 60 ¶¶ 40-42; Patrik's RSUMF, Doc. 63 ¶¶ 40-42.
[23]  Johnson Compl., Doc. 1-1 ¶¶ 17-39.
[24]  *See* Defs.' Joint SUMF, Doc. 60 ¶¶ 59-60; Patrik's RSUMF, Doc. 63 ¶¶ 59-60.

rights to deny coverage if it found that the insurance policy did not cover Johnson's injury.[25] However, Berkley declined to accept Keane's tender.[26]

B. **Procedural History**

Seneca removed this matter to this Court pursuant to this Court's diversity jurisdiction.[27] Defendants then filed third-party complaints against Patrik's, demanding that Patrik's defend or indemnify it in connection with Johnson's personal injury lawsuit pursuant to the indemnification provision in the Seneca-Patrik's MSA.[28] Patrik's denies any responsibility for defending or indemnifying Keane.[29]

Defendants now jointly move for summary judgment on their third-party indemnification claim based on Section 7.2 of the Seneca-Patrik's MSA.[30] That motion has been fully briefed and is ripe for disposition.

II. **LAW**

Under Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any

---

[25] *See* April 5, 2019 Ltr. from Kelley Inman, Senior Liability Claims Examiner for Berkley Environmental, to Christopher M. Treischel, Esq., Ass. Gen. Counsel for Seneca, Doc. 74-20 at 4 ("As of this date, there is a Writ of Summons in the underlying matter, with no allegations against Seneca. Accordingly, [the insurer] reserves all of its rights, including its rights to deny, disclaim and/or limit coverage under the [insurance] [p]olicy for any and all claims against Seneca, once they become known, as outlined below.").
[26] Defs.' Joint SUMF, Doc. 60 ¶ 58; Patrik's RSUMF, Doc. 63 ¶ 58.
[27] *See* Notice of Removal, Doc. 1.
[28] *See* Keane Third-Party Compl., Doc. 13; Seneca Third-Party Compl., Doc. 20.
[29] *See* Patrik's Ans. to Keane's Third-Party Compl., Doc 40.
[30] Defs.' Joint MSJ, Doc. 58.

material fact and the movant is entitled to judgment as a matter of law." As the Supreme Court of the United States expressed in *Celotex Corp. v. Catrett*, summary judgment is required where a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case" on an issue that the "party will bear the burden of proof at trial."[31]

Material facts are those "that could alter the outcome" of the litigation, "and disputes are 'genuine' if evidence exists from which a rational person could conclude that the position of the person with the burden of proof on the disputed issue is correct."[32] A defendant "meets this standard when there is an absence of evidence that rationally supports the plaintiff's case."[33] Conversely, to survive summary judgment, a plaintiff must "point to admissible evidence that would be sufficient to show all elements of a *prima facie* case under applicable substantive law."[34]

The party requesting summary judgment bears the initial burden of supporting its motion with evidence from the record.[35] When the movant properly supports its motion, the nonmoving party must then show the need for a trial by setting forth "genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party."[36] The United States Court

---

[31] *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).
[32] *EBC, Inc. v. Clark Bldg. Sys., Inc.*, 618 F.3d 253, 262 (3d Cir. 2010) (quoting *Clark v. Modern Grp. Ltd.*, 9 F.3d 321, 326 (3d Cir. 1993)).
[33] *Clark*, 9 F.3d at 326.
[34] *Id*.
[35] *Celotex Corp.*, 477 U.S. at 323.
[36] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

of Appeals for the Third Circuit explains that the nonmoving party will not withstand summary judgment if all it has are "assertions, conclusory allegations, or mere suspicions."[37] Instead, it must "identify those facts of record which would contradict the facts identified by the movant."[38]

In assessing "whether there is evidence upon which a jury can properly proceed to find a verdict for the [nonmoving] party,"[39] the Court "must view the facts and evidence presented on the motion in the light most favorable to the nonmoving party."[40] Moreover, "[i]f a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c)," the Court may "consider the fact undisputed for purposes of the motion."[41] Finally, although "the court need consider only the cited materials, . . . it may consider other materials in the record."[42]

### III.  ANALYSIS

Under Section 7.2, Patrik's has no duty to indemnify or defend against claims against Seneca that arise out of Seneca's own "gross negligence."[43] Both Patrik's and Defendants offer their own competing definitions of gross negligence that

---

[37] *Betts v. New Castle Youth Dev. Ctr*, 621 F.3d 249, 252 (3d Cir. 2010).
[38] *Port Auth. of N.Y. and N.J. v. Affiliated FM Ins. Co.*, 311 F.3d 226, 233 (3d Cir. 2002) (quoting *Childers v. Joseph*, 842 F.2d 689, 694-95 (3d Cir. 1988)).
[39] *Liberty Lobby*, 477 U.S. at 252 (quoting *Schuylkill & Dauphin Imp. Co. v. Munson*, 81 U.S. 442, 448 (1871)).
[40] *Razak v. Uber Technologies, Inc.*, 951 F.3d 137, 144 (3d Cir. 2020).
[41] Fed. R. Civ. P. 56(e)(2); *see also Weitzner v. Sanofi Pasteur Inc.*, 909 F.3d 604, 613-14 (3d Cir. 2018).
[42] Fed. R. Civ. P. 56(c)(3).
[43] Seneca-Patrik's MSA, Doc. 13-3 at 5 (§§ 7.2, 7.21).

support their positions on the indemnification issue. As is perhaps evident in their dispute, the precise definition of gross negligence is a source of confusion in Pennsylvania jurisprudence. In its recent decision, *Feleccia v. Lackawanna College*, the Supreme Court of Pennsylvania acknowledged difficulty in defining the concept of gross negligence but did not settle on a definition.[44] The difficulty in defining gross negligence arises in part from the fact that the term's origin lies in Pennsylvania statutory law rather than the common law.[45]

Defendants define gross negligence as a "failure to perform a duty in reckless disregard consequences or with such want of care and regard for the consequences as to justify a presumption of willfulness or wantonness."[46] They argue that the record is devoid of evidence from which a jury could infer that they acted in reckless, willful, or wanton manner. Defendants' definition comes from *Williams v. State Civil Service Commission*, a decision of the Superior Court of Pennsylvania.[47]

---

[44] 215 A.3d 3, 18-21 (Pa. 2019). The *Feleccia* court held that a liability waiver did not preclude injured-student athletes from brining suit against the defendant-college for its gross negligence based on public policy. *See id.*

[45] *See* § 13.50 Gross Negligence, Pennsylvania Suggested Standard Civil Jury Instructions, (5th ed. 2020).

[46] *Id.* at 7-8 (quoting *Fidelity Leasing Corp v. Dun & Bradstreet, Inc.*, 494 F. Supp. 786, 790 (E.D. Pa. 1980)).

[47] *See Fidelity Leasing Corp.*, 494 F. Supp. at 790 (citing 306 A.2d 419, 422 (Pa. Cmwlth. 1973), *aff'd on other grounds.*, 327 A.2d 70 (Pa. 1974)). As the parties appear to agree that Pennsylvania law governs the Seneca-Patrik's MSA, the Court concludes that the Pennsylvania courts' definition of gross negligence controls interpretation of the MSA. *See Mellon Bank, N.A. v. Aetna Bus. Credit, Inc.*, 619 F.2d 1001, 1013 (3d Cir. 1980) ("Trade terms, legal terms of art, numbers, common words of accepted usage and terms of a similar nature should be interpreted in accord with their specialized or accepted usage unless such an interpretation would produce irrational results or the contract documents are internally inconsistent.").

Patrik's argues that the Pennsylvania courts have retreated from that definition and do not require a party alleging gross negligence to show recklessness on the part of the tortfeasor. It directs the Court's attention to another Superior Court case: *Bloom v. Dubois Regional Medical Center*.[48]

### A. Gross Negligence in Pennsylvania

As noted above, both state and federal courts in Pennsylvania have struggled to precisely define gross negligence. This Court reviews those efforts before concluding that recklessness or willful misconduct does not constitute gross negligence as the term is used in the Seneca-Patrik's MSA.

In *Bloom*—the decision Patrik's relies on—the Superior Court considered whether the plaintiffs "sufficiently pled gross negligence," as opposed to simple negligence, in a case where the defendant claimed immunity to civil liability under a statute that immunized certain actions "[i]n the absence of willful misconduct or gross negligence."[49] The *Bloom* court therefore undertook to distinguish gross and simple negligence.[50] It noted that the Commonwealth Court of Pennsylvania in *Williams* defined gross negligence as the "failure to perform a duty in reckless

---

[48] Patrik's Sur Reply, Doc. 73 at 5 (citing 597 A.2d 671, 679 (Pa. Super. 1991)).
[49] *Bloom*, 597 A.2d at 673 (quoting 50 P.S. § 7114(a)). The statute at issue was Section 7114(a) of the Mental Health Procedures Act, 50 P.S. §§ 7101 *et seq.*
[50] *See id.* at 678.

10

disregard of the consequences or with such want of care as to justify a conclusion of willfulness or wantonness."[51]

But the *Bloom* court disagreed with the *Williams* court's definition. Its disagreement appears to stem from the fact that recklessness and wantonness require a different state of mind than negligence does, whether simple or gross in nature.[52] It also relied on the Pennsylvania Supreme Court's observation that "there are no

---

[51] *Id.* at 679 (quoting 306 A.2d at 422). Our Court of Appeals has not directly addressed the definition of "gross negligence" in this context. In *Fialkowski v. Greenwich Home for Child., Inc.*, 921 F.2d 459, 462 (3d Cir. 1990), which Defendants cite to in support, the United States Court of Appeals for the Third Circuit considered claims for gross negligence against a healthcare provider with statutory immunity. The court defined gross negligence as "[r]eckless, willful or wanton misconduct," drawing its definition from 42 P.S. § 8336(d). *Id.* at 462 n.7 (quoting 42 Pa. C.S. § 8336(d)). Section 8336(d) provides that, for the purposes of Title 42 of the Pennsylvania Consolidated Statutes Annotated, "[r]eckless, willful or wanton misconduct shall constitute gross negligence." 42 Pa. C.S. § 8336(d). This Court does not read section 8336(d) to define gross negligence as reckless conduct. Rather it appears to provide that reckless conduct shall constitute gross negligence in actions involving statutes from Title 42, which are not implicated here.

[52] *Bloom*, 597 A.2d at 679 (citing *Kasanovich v. George*, 34 A.2d 523, 525 (Pa. 1943)). In *Kasanovich*, the Supreme Court of Pennsylvania distinguished negligence and wanton misconduct, observing that "wanton misconduct is something different from negligence however gross—different not merely in degree but in kind, and evincing a different state of mind on the part of the tortfeasor." 34 A.2d at 525. The court expanded upon the distinction in the two states of mind, explaining that "[n]egligence consists of inattention or inadvertence, whereas wantonness exists where the danger to the plaintiff, though realized, is so recklessly disregarded that, even though there be no actual intent, there is at least a willingness to inflict injury, a conscious indifference to the perpetration of the wrong." *Id.* Similarly, in *In re Schiedmantel*, the Superior Court acknowledged that although "Pennsylvania criminal law equates gross negligence with recklessness, . . . gross negligence in the context of criminal negligence is not the same thing as gross negligence in tort." 868 A.2d 464, 485 (Pa. Super. 2005) (citing *Commonwealth v. Huggins*, 836 A.2d 862, 867-68 (Pa. 2003)). The *Schiedmantel* court noted that "[g]ross negligence may be deemed to be a lack of slight diligence or care comprising a conscious, voluntary act or omission in 'reckless disregard' of a legal duty and the consequences to another party" but it did not affirmatively adopt that definition, which originated in a legal dictionary. *Id.* (citing *Ratti v. Wheeling Pittsburgh Steel Corp.*, 758 A.2d 695 (Pa. Super. 2000) (quoting Black's Law Dictionary 1057 (7th ed. 1999))).

degrees of negligence in Pennsylvania," only "differing standards of care."[53] The *Bloom* court therefore concluded that gross negligence "clear[ly] . . . does not encompass wanton or reckless behavior."[54]

It is unclear whether the Pennsylvania Supreme Court adopted that aspect of the *Bloom* court's definition of gross negligence—that it does not require evidence of recklessness—but it did comment in *Feleccia* that "gross negligence does not rise to the level of the intentional indifference or 'conscious disregard' of risks that defines recklessness."[55]

The *Bloom* court ultimately held that the Pennsylvania General Assembly "intended the term gross negligence, to mean a form of negligence where the facts support substantially more than ordinary carelessness, inadvertence, laxity, or indifference," or, in other words, a "flagrant, gross[] deviat[ion] from the ordinary standard of care."[56] In *Albright v. Abington Memorial Hospital*, a later case that also involved statutory immunity, the Supreme Court referred to *Bloom*'s definition as "a clear, reasonable, and workable definition of gross negligence which is consistent with the purpose and intent of the [immunity statute]."[57]

---

[53] *Bloom*, 597 A.2d at 679 (quoting *Ferrick Excavating v. Senger Trucking Co.*, 484 A.2d 744, 749 (Pa. 1984)).
[54] *Id.* (citing *Kasanovich*, 34 A.2d at 525).
[55] *Feleccia*, 215 A.3d at 20.
[56] *Id.*
[57] 696 A.2d 1159, 1165 (Pa. 1997); *see also Est. of Whitling ex rel. Whitling v. United States*, 99 F. Supp. 2d 636, 648 (W.D. Pa. 2000) (adopting the *Bloom* definition in a case involving statutory immunity).

Additionally, Pennsylvania's Suggested Standard Jury Instruction on gross negligence offers that "[i]f reckless[ness] versus gross negligence is an issue in the case" then courts should instruct the jury that "[g]ross negligence is less than reckless conduct" and give the suggested instruction for reckless conduct.[58] In support, the commentary to the instruction cites to distinction between the states of mind necessary to support recklessness and gross negligence—the same principle that guided the *Bloom* court.[59]

Other federal courts have adopted the *Bloom* court's definition of gross negligence outside of the statutory immunity context. In *Resolution Trust Corp. v. Gross*, the Honorable Louis H. Pollak adopted the definition in an Eastern District of Pennsylvania civil action where a stock savings association in receivership sued its former directors for their allegedly grossly negligent management of the association.[60] The directors argued that the plaintiff-association's complaint failed to adequately allege that they acted with gross negligence as opposed to simple negligence.[61] Judge Pollak adopted *Bloom*'s definition of gross negligent in rejecting the directors' position, noting that gross negligence did not require "wanton" or "reckless" conduct.[62]

---

[58] § 13.50 Gross Negligence, Pennsylvania Suggested Standard Civil Jury Instructions, (5th ed. 2020). The Suggested Standard Civil Jury Instructions are published by the Pennsylvania Bar Association.
[59] *Id.* (citing 34 A.2d at 525).
[60] 1994 WL 570153, at *1-3 (E.D. Pa. Oct. 13, 1994)
[61] *Id.* at *2.
[62] *Id.* at *3.

Judge Pollak acknowledged that the case before him did not involve the Mental Health Procedure Act but noted that "[t]he *Bloom* court looked to general principles of Pennsylvania law—which, admittedly, send mixed signals on how gross negligence should be defined."[63] More recently, the Honorable Gerald J. Pappert, also writing for the Eastern District, adopted *Bloom*'s definition in *Dragone v. Pew*, an auto-accident case, noting that "[u]nlike recklessness, . . . gross negligence, does not involve a conscious disregard of the risk of harm."[64]

In the absence of more precise guidance from the Supreme Court of Pennsylvania or the Third Circuit, the combination of the *Kasanovich* court's distinction between states of mind and the many decisions that adopt or approve of *Bloom* persuade this Court to join Judges Pollak and Pappert and conclude that a finding of gross negligence does not require evidence of recklessness.

B.    **Application to this Case**

The Court now turns to the record in this case to determine whether there are disputed issues of fact as to Defendants' gross negligence. To consolidate the discussion above, gross negligence requires evidence that an actor's conduct was an extreme departure from the relevant standard of care but does not require evidence that the actor acted recklessly. As the *Bloom* court noted, a party's gross negligence

---

[63]   *Id.* However, Judge Pollak did not "foreclose the possibility that [he] [might] later . . . be persuaded of a better definition of gross negligence." *Id.*

[64]   *Dragone v. Pew*, 2022 WL 3357452, at *2 (E.D. Pa. Aug. 15, 2022) ("A defendant is grossly negligent when he fails to exercise even scant care and his conduct amounts to an extreme departure from ordinary care." (citing *Feleccia*, 215 A.3d at 20)).

is an intensely factual issue, and a court should only determine that a party was not grossly negligent as a matter of law "where the case is entirely free from doubt and there is no possibility that a reasonable jury could find negligence."[65]

As for the relevant standard of care, Patrik's submitted into the record an affidavit from Timothy J, Carlsen, P.E., a licensed engineer, "Certified Safety Professional accredited by the Board of Certified Safety Professionals," and OSHA Authorized Construction Safety Trainer."[66] Based on his review of the evidence in this matter, Carlsen opines that Leech failed to "properly install the grate or have the three Keane workers in the vicinity properly install the grate" and failed to confirm that the Keane workers actually placed "safety stanchions" and "safety tape" around the incident area as Leech requested.[67] Carlsen further opined that even if Leech had placed safety tape and stanchions, "neither complied with OSHA requirements" set forth in 29 C.F.R. § 1926.501(b)(4) *et seq.*[68] Title 29 C.F.R. §§ 1926.501 and 1926.502 require employers like Seneca to provide "fall protection systems" that meet certain specifications. Defendants do not present any evidence that they complied with those requirements with respect to Well 164 H.

It is undisputed that Defendants failed to take at least some precautions they could have taken to prevent Danny Johnson's injury. As Carlsen notes, no one

---

[65]  597 A.2d at 679-80.
[66]  Aff. of Timothy J. Carlsen, P.E., Doc. 74-19 ¶ 1.
[67]  *Id.* ¶ 16.
[68]  *Id.* ¶ 34.

ensured that cautionary tape was put up around Well 164 H after Leech requested it. The parties dispute whether Leech or any other Seneca or Keane employee placed cones around the area. Carlsen additionally notes that Keane and Seneca personnel were empowered to issue and could have issued a "Stop Work Authority" and that Seneca's training materials informed its employees to issue such orders if they observed safety concerns.[69] Carlsen's findings are supported by the record.

Based on that record evidence and Carlsen's explanation of the relevant standards of care, the Court concludes that a reasonable factfinder could find that Seneca's conduct on January 7, 2018 constituted an extreme departure from the standard of care. Whether that deviation is extreme or slight is cannot be decided as a matter of law. Defendants have certainly not shown that there is no possibility a jury could find them grossly negligent, as the *Bloom* court put it. Rule 56 does not require such a high showing, but as noted above, there are disputed issues of fact regarding the magnitude of Defendants' departure from the standard of care.

Therefore, the Court cannot determine whether Section 7.2 requires Patrik's to indemnify or defend Defendants as a matter of law because Section 7.2's applicability hinges on a disputed issue of fact. Summary judgment is accordingly not appropriate here.

---

[69] *Id.* ¶¶ 32, 33

## IV. CONCLUSION

For the foregoing reasons, Defendants' joint motion is denied.

An appropriate Order follows.

BY THE COURT:

*s/ Matthew W. Brann*
Matthew W. Brann
Chief United States District Judge
